UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

ARSHDEEP GARCHA,
                      Plaintiff,

-v-                                    22-CV-637 (JPO)

NEW YORK CITY *et al*,                OPINION AND ORDER
                      Defendants.

---------------------------------------------------------------

J. PAUL OETKEN, District Judge:

Plaintiff Arshdeep Garcha, proceeding *pro se*, filed this action against New York City and the New York City Administration for Children Services ("NYC ACS" or "ACS") (together, "Defendants"), which was docketed on January 25, 2022. Garcha documented that he had technical difficulty filing the Complaint, but that he did receive acknowledgment of its receipt when he first filed it on January 9, 2022. (ECF Nos. 1 – 2.) Garcha brings claims for discrimination and retaliation in violation of Title VII, codified at 42 U.S.C. §§ 2000e *et seq.*, New York State Executive Law §§ 290 *et seq.* ("NYHRL"), and New York City Administrative Code §§ 8-101 *et seq.* ("CHRL"). Defendants have moved to dismiss Garcha's Complaint. (ECF Nos. 14, 23.) For the reasons that follow, Defendants' motion to dismiss is granted in part and denied in part.

**I.    Background**[1]

The NY ACS hired Garcha on October 16, 2017, as a Child Protective Specialist ("CPS"). (Compl. ¶ 1.) Garcha alleges that he finished his probationary employment period successfully and became a full-time employee in April 2018. (Compl. ¶ 2.)

---

[1] The following background facts are taken from Garcha's complaint and assumed as true for purposes of this motion. (ECF No. 2, "Compl.")

1

In September 2018, Garcha received a call from his son, who informed him that Linda Smith, a CPS, was at Garcha's home to speak with him.[2] Garcha returned home, and Smith allegedly reassured him that "everything is okay," so Garcha left and allowed Smith to interview his family in his absence. (Compl. ¶ 5.) On October 12, 2018, Smith visited Garcha's home again during his daughter's birthday party. During this visit, she took a picture of his daughter with a cake and again reassured Garcha that she knew "nothing was going on" but said that her supervisor requested that Garcha nonetheless take domestic violence services because, in her alleged words, "you are from India and your wife is from Russia," and the supervisor believed that "men from that country abuse their wives." (Compl. ¶ 6.)

Smith visited Garcha's home again on October 16, 2018, and again spoke with members of Garcha's family. Garcha alleges that his family told Smith that there were no issues and that things were "spectacular." (Compl. ¶ 7.) But Smith insisted that Garcha and his wife visit her in her office the following day, which they did. (Compl. ¶ 8.) After interviewing Garcha's wife alone, Smith allegedly reassured Garcha again that his wife stated that she had not experienced domestic violence. Garcha then spoke with Smith's CPS supervisor, Brenda Walker, about her request that he attend domestic violence services. Walker allegedly "angrily threatened" to force Garcha to attend these domestic violence services "through a judge." (Compl. ¶ 8.)

On November 16, 2018, Garcha complained about Smith's and Walker's conduct to the Assistant Commissioner of the ACS Office of Special Investigations, which investigates allegations against ACS employees like Garcha. (Compl. ¶ 11.) On November 20, 2018, Smith

---

[2] While the claims in this lawsuit concern Garcha's interactions with the NY ACS as an employee, the issues allegedly stemmed from his interactions with the agency as the subject of an investigation of some sort, while he was also simultaneously employed there as a CPS.

allegedly chastised Garcha for reporting their conduct, and Smith said that if he continued lodging complaints, he would "have more problems than he has now." (Compl. ¶ 12.) Thereafter, Garcha contacted a series of people, including the Inspector General of the Department of Investigations ("DOI"), Milton Yu, Inspector General Jodi Franzese, and Commissioner of ACS, David Hansell, to request that they investigate Smith and Walker for "falsifying records about his family and abusing their power." (Compl. ¶ 12.) He also allegedly met with "Officer Bradley Howard" on November 28, 2018, to discuss his allegations against Smith and Walker. He then received a letter informing him that they were under investigation on November 30, 2018. (Compl. ¶¶ 14 – 15.)

In 2019, Garcha contacted the New York State Office of Children and Family Services ("OCFS") and the New York City Comptroller. (Compl. ¶¶ 16 – 17.) Allegedly, on July 24, 2019, "Defendant's attorney Yashpan" from the Manhattan OCFS office threatened Garcha by saying that he was "acting like Mr. India and approached the DOI and Commissioner" and "I will make sure you lose your job." (Compl. ¶ 18.) ACS terminated Garcha's employment on September 20, 2019. (Compl. ¶ 19.)

**II.     Legal Standard**

Defendants have moved to dismiss the complaint because of (1) Garcha's alleged failure to exhaust his administrative remedies under Title VII; (2) the election of remedies doctrine; and (3) failure to plausibly plead his claims, which the Court construes as a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Rule 12(b)(6) authorizes a district court to dismiss a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss for failure to state a claim, a complainant must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This means that a complaint is properly dismissed where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. A complaint is also properly dismissed "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

By contrast, in bringing a 12(b)(1) motion, "[t]he defendant may challenge either the legal or factual sufficiency of the plaintiff's assertion of jurisdiction, or both." *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001). While a court must accept as true all the material factual allegations contained in the complaint, in contrast with a 12(b)(6) motion, on a 12(b)(1) motion, the court should "not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004). In reviewing a motion to dismiss for lack of subject matter jurisdiction, a court may consider evidence outside the pleadings. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

Finally, Garcha is proceeding *pro se*. "It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020). This duty is especially pressing "when the *pro se* plaintiff alleges that her civil rights have been violated," *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), because the purpose of affording liberal construction to *pro se* filings is fundamentally to protect "*pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training," *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 475 (internal quotation marks omitted). "Nonetheless, a *pro se* complaint must state a plausible claim for relief." *Meadows*, 963 F.3d at 243.

### III. Discussion

#### A. Exhaustion

Defendants' first argument is that the Court must dismiss Garcha's Title VII claims because he failed to plead that he exhausted his administrative remedies as required by the statute. It is true that Garcha failed to include this information in his initial Complaint; however, he did attach his notice of right to sue from the Equal Employment Opportunity Commission (the "EEOC") as part of his reply to Defendants' motion to dismiss. Defendants then argued that this is insufficient, as Garcha cannot amend his Complaint via reply. While generally this is true, the rule is relaxed when it comes to plaintiffs proceeding *pro se*. "Courts may consider the allegations contained in *pro se* plaintiffs' memorandum of law, where those allegations are consistent with the allegations in the complaint." *Andino v. Fischer*, 698 F.Supp.2d 362, 376 (S.D.N.Y.2010). Therefore, the Court credits Garcha's proof that he received a notice of right to sue from the EEOC.

Defendants also argue that Garcha failed to file within the 90-day time frame given by an EEOC right-to-sue letter. Garcha, however, points to the evidence filed on the docket that he originally attempted to file his Complaint on January 9, 2022, and Garcha further alleges that he received notice of receipt while acknowledging that he had some technical difficulties navigating the Court system. January 9 is within the 90-day limit.

The EEOC filing deadline "is not jurisdictional and, like a statute of limitations, is subject to equitable tolling." *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003), *as amended* (July 29, 2003). Courts regularly find equitable tolling appropriate "where the plaintiff actively pursued judicial remedies but filed a defective pleading during the specified time period." *Brown v. Parkchester S. Condos.*, 287 F.3d 58, 60 (2d Cir.2002) (internal quotation marks omitted). In light of Garcha's *pro se* status and his submissions regarding his

5

attempts to file the Complaint within the 90-day deadline, equitable tolling as to the date on which the Complaint was officially filed is warranted here. Defendants' motion to dismiss Garcha's Title VII complaint because of failure to exhaust is denied.

### B.     Election of Remedies Doctrine

Defendants next argue that Garcha's NYHRL and CHRL claims are barred by the election of remedies doctrine. Both the NYHRL and CHRL statutes provide that an individual who files a complaint with either the New York State Division of Human Rights or the New York City Commission on Human Rights waives his right to sue in court on the same facts. Specifically, Section 297(9) of the NYHRL states in relevant part:

> Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction . . . unless such person has filed a complaint hereunder or with any local commission on human rights . . . provided that, where the division has dismissed such complaint on the grounds of administrative convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled, such person shall maintain all rights to bring suit as if no complaint had been filed with the division.

N.Y.S. Exec. Law § 297(9).

Similarly, Section 8-502(a) of the CHRL provides in pertinent part:

> Except as otherwise provided by law, any person claiming to be aggrieved by an unlawful discriminatory practice as defined in chapter one of this title or by any act of discriminatory harassment or violence as set forth in chapter six of this title shall have a cause of action in any court of competent jurisdiction . . . unless such person has filed a complaint with the city commission on human rights or with the state division of human rights with respect to such alleged unlawful discriminatory practice or act of discriminatory harassment or violence.

N.Y.C. Admin. Code § 8-502(a).

Here, it is undisputed that Garcha filed a grievance letter concerning his NYSHRL and CHRL claims with the New York State Division of Human Rights. Garcha's claim was considered and dismissed on the merits after a determination of no probable cause. (*See* ECF No. 25 at 17 – 21.) Garcha argues that he can still bring these claims because he received a right-to-sue notice from the EEOC pertaining to them, but this argument misunderstands the law. The rights that Garcha seeks to assert are "self-limiting, statutorily and code-created rights," and therefore, Garcha "can only assert the rights of action as prescribed by the respective statute and code." *York v. Ass'n of Bar of City of New York,* 286 F.3d 122, 127 (2d Cir. 2002). By the terms of the respective statutes, by filing a grievance letter with the New York State Division of Human Rights, Garcha waived his right to bring those same claims in federal court.[3] Accordingly, Garcha's NYSHRL and CHRL claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

C.      **Rule 12(b)(6)**[4]

Defendants next argue that Garcha has failed to plead facts sufficient to state a claim to relief plausible on its face. "To defeat a motion to dismiss or a motion for judgment on the pleadings in a Title VII discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.,* 801 F.3d 72, 87 (2d Cir. 2015). Thus, if a plaintiff makes a showing that he or she (1) is a

---

[3] There are two exceptions to the waiver included in both the NYSHRL and the CHRL statutes, but neither applies here. *See Son v. Greenland Produce & Grocery, Inc.*, No. 11 Civ. 9533, 2013 WL 12084500, at *6 (S.D.N.Y. Mar. 11, 2013), *aff'd sub nom. Yong Chul Son v. Chu Cha Lee*, 559 F. App'x 81 (2d Cir. 2014) (describing the two exceptions and noting that they do not apply to similar material facts.)

[4] As only Garcha's Title VII claims survive, the Court evaluates only these claims.

member of a protected class, (2) was qualified for the position he or she sought, (3) suffered an adverse employment action, and (4) can sustain a minimal burden of showing facts suggesting an inference of discriminatory motivation, "then the plaintiff has satisfied the *prima facie* requirements and a presumption of discriminatory intent arises in [his] favor, at which point the burden of production shifts to the employer, requiring that the employer furnish evidence of reasons for the adverse action." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).

      Here, Defendants appear to concede that Garcha has established the first three elements — that he is a member of a protected class because of race and national origin, that he was at least initially deemed qualified for his position, and that he suffered an adverse employment action — but argue that he has failed to plead facts suggesting an inference of discriminatory motivation.

      Though Garcha will ultimately "need evidence sufficient to prove discriminatory motivation on the part of the employer-defendant," at this initial stage, "the plaintiff does not need substantial evidence of discriminatory intent." *Littlejohn*, 795 F. 3d at 311.  Garcha has alleged that he was called "Mr. India," explicitly stereotyped based on his race and national origin, told that his complaints about said alleged discriminatory remarks and treatments would cause "more problems" for him, as well as explicitly threatened with being fired.  Construing the Complaint liberally, as required for a *pro se* plaintiff, the Court concludes that these allegations suffice to meet Garcha's "minimal" burden in setting out the final element of his *prima facie* case.  Defendants' argument to the contrary relies on factual allegations — and disagreements with the facts as Garcha alleges them in the Complaint — which the Court does not consider at this stage of litigation.  *See Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (in

8

determining the adequacy of a claim under Rule 12(b)(6), a court is generally limited to the "facts stated on the face of the complaint") (internal quotation marks omitted).

Garcha also raises a claim for retaliation under Title VII. The test here is similar: To make out a *prima facie* case of retaliation under Title VII, a plaintiff must show "(1) participation in a protected activity; (2) that the defendant knew of the protected activity;(3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'" *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005) (*quoting McMenemy v. City of Rochester*, 241 F.3d 279, 282-83 (2d Cir. 2001)). Based on the same facts and standards described above, and again guided by the admonishment to construe *pro se* complaints liberally, the Court likewise concludes that Garcha has established a minimal *prima facie* case for retaliation.

Finally, Garcha requests some forms of relief that are outside the bounds of a Title VII claim, such as his request for "a ruling from this court that criminal charges should be enforced" upon the Defendants and involved witnesses. To the extent that Garcha seeks relief that is not cognizable under his remaining Title VII claims for discrimination and retaliation, those applications are denied.

### IV.  Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.

Defendants shall answer the Complaint within 21 days after the date of this order.

The Clerk of Court is directed to close the motion at ECF Number 14.

SO ORDERED.

Dated: March 28, 2023
       New York, New York

_____
J. PAUL OETKEN
United States District Judge